Then we'll proceed to hear the final case on our calendar. What was the final case? Number 202958 Esposito versus Gary. Good evening, your honors. My name's, can you hear me? Yes. Oh, very good. I represent the appellant, the plaintiff in the underlying lawsuit, Luisa Esposito. Ms. Esposito filed a legal malpractice case all by herself without consulting any lawyers. And she was representing herself pro se up until the district court dismissed her case on timeliness grounds. At that point, she reached out to my co-counsel, Mr. Gleason, who's also on the line, and myself and asked if we might be able to help her reinstate her claims. And the first thing we did, of course, was bring a rule 59 slash rule 60. It's frozen. You're frozen. I'm frozen? I can see you all right, Mr. Griffith. Judge Nardini, can you see him okay? I can. Everything's fine on my end. Judge Calabresi, is he reinstated or still frozen? No, it's fine now. Okay, very good. Please proceed then. Very good. I was saying that the district court denied our motion for reconsideration, basically, under rules 59 and 60. And we've now brought this appeal, and we've asserted four independent arguments as to why the district court's decision should be overturned and reversed. I think that there's one fact that's apparent on these extraordinary factual records, and that is that had Ms. Esposito been represented by a lawyer when she brought this lawsuit, there would have been no way that the lawsuit would have been dismissed on timeliness grounds. And that's because the very first time that Ms. Esposito manifest any kind of objective dissatisfaction with her lawyers was on December 28, 2015, when she fired them. And she sent a very clear email to that. Counsel, suppose we agree with you that under New York law, this case was timely. Didn't the district court also decided, without much saying, but on the merits? And hasn't that not been traversed at all? Not in your briefs, not in anything else? Your Honor, we did touch upon it in our briefs. The district court did emphasize timeliness, but did say sort of in passing, there are no merits. And the question about whether that has been traversed is what kind of bothers me. Well, Your Honor, I think we have established that there's merit. We spent a lot of time with respect to the Rule 59-60 motion preparing a proposed second amended complaint. And remember that although the magistrate judge found, it's really her decision that goes into detail as to why Ms. Esposito's pro se complaint didn't state a valid legal malpractice claim. But she held under a long line of Second Circuit uncontested, uncontroversial cases that because she was a pro se litigant, her complaint should be interpreted liberally. And she should be given at least one opportunity to address the substantive deficiencies that the magistrate outlined in her carefully worded decision. Well, we took that decision to heart. And I think that in the proposed second amended complaint, which is part of the record in this case, and we do discuss it, I believe, in the factual section of our opening brief, we, she's now completely clear, cleared any of those deficiencies. She asserts a valid legal malpractice claim. And in the district court's decision denying the motion for reconsideration, the district court does not touch upon that issue at all. Can I ask in the amended complaint that you would propose to file? Yes. Did you have an allegation in there to the effect that during a mediation, I think it was in 2014, that the defendants rejected a settlement offer without consulting with the plaintiff? Or am I thinking of a different part of the record? No, that's in our complaint. And it's also touched upon in our brief, albeit I believe it's in a footnote. But that certainly is one of the several grounds for malpractice that we assert in the proposed second amended complaint. It's important to note, by the way, that even though we call it the second amended complaint, it's the first opportunity that Ms. Esposito has had to address the substantive deficiencies that the magistrate judge outlined. The first amendment was merely to drop a non-diverse party so that there was subject matter jurisdiction. In any case, what I was saying was that, oh, and I see I'm over my time limit. Will you reserve a couple of minutes for rebuttal? Thank you very much. Thank you very much. Mr. Drummond. Good morning, Your Honors. Stephen Drummond and good morning, counsel. Stephen Drummond on behalf of Mr. Gary and the Gary defendant. May it please the court. Judge, the appellant has not demonstrated and cannot demonstrate that Judge Gardefee abused his discretion on any of the underlying motions. Judge Gardefee's decisions were very thorough, well-reasoned, and as this court has long experience reading decisions from courts, I'd like to think that Judge Gardefee's decision and legal analysis and reasoning is one of the most compelling ones. So, counsel, would you please go right to the timeliness issue? It struck me when reading the district court's decision that New York law seems to require some objective manifestation of a breakdown in the actual relationship of trust. It doesn't turn on whether in the client's heart of hearts, they have secretly lost all faith in their lawyer, because if that were true, I would think that in the course of most representations, at some point, that relationship has broken and then maybe be repaired. But, you know, nobody gets fired. People go along with their lawyer. So isn't it true that under New York law, you do need some objective manifestation, not just sort of an armchair psychoanalysis of a client to say, I have lost faith in my lawyers? Your Honor, that is a very valid question, Judge. And that is what happened here. There is an objective standard. The state of mind of the Ms. Cespedes herself— No, no, no, I just said—I just distinguished that. I just said, isn't the state of mind not relevant, because that is a subjective matter? Isn't there need for an objective manifestation of the state of mind? Well, there's that demonstration here— That you're fired, or they say, I quit, or something like that. Well, Judge, I don't think the law requires that. It requires a plaintiff to have lost trust and confidence in the lawyer. And there's a clear representation here as— Can you give me a specific act that the plaintiff, the appellant in this case, did that we can say, at this point, the counsel was no longer my counsel? Because anything else leaves the start of a statute of limitation completely vague, impossible. You need— Well, Judge— What was it here? Your Honor, that's for the plaintiff to plead and not for the defendant to do. And in this case, it's pled that she lost trust and confidence in all— Yes, she lost confidence. Yes, Your Honor. But what did she do that signified that in an outward and visible sign, so we can say, from that date, the statute of limitation drug? She ultimately fired them, Judge. And not only did that happen, so what has happened is the ultimate firing is support that the trust and confidence was lost in the 15th. Because a client didn't just get up and say, I'm going to fire my lawyer on this particular date. It's predicated on a belief before that or something that occurred before that, which is her obligation to plead. So— Let me ask you this question. Hypothetically, a client hires you. You represent them for four years. Later on, okay, after they submit an affidavit saying that in year two, they lost absolutely every shred of confidence in you. Did they secretly then terminate the relationship of trust and confidence? Assume that they filed that affidavit and it is found to be wholly credible. Your Honor, in a situation like that, in the hypothetical that you present, no, Judge, because the representation continued two years subsequently. This is not the case here. And that's not what's pled before Judge Gardafi in the amended complaint and the second amended complaint. Let me put it another way. Can a lawyer say, stop? Is a lawyer barred from charging fees? Because in the client's mind of mind, the client has lost confidence in the lawyer. When the lawyer is told you're no longer my lawyer, who would ever say the lawyer keeps working just because the client has lost confidence that the fees can't continue to be charged? Well, Judge, I would respectfully argue to that, that I believe a client shouldn't have to pay a lawyer after the client has made a manifest representation that I no longer have trust in you and I no longer want you to represent me. Wait, that's different from what you just said. You just said make a manifest representation, but you're trying to backdate it to before they made any manifest representation. And in their heart, they had lost confidence. You're saying that when the moment came in their heart, the relationship was done. But now you're saying that when they made a manifest representation of it, it's done. I'm not saying that, Judge. I'm saying that I'm answering the hypothetical that was presented. One hypothetical was if a lawyer continues to represent someone two years after that person in their heart, which is in their heart, not an express situation, and the relationship continues two years after that, does that lawyer still represent that person? And the answer to that is obviously yes, there's a two-year demonstration of representation. So weren't these lawyers still filing stuff in court? Your Honor, the only thing that was filed from these lawyers was on the motion to renew and re-argue that was done in August of 2015, which was argued, as Ms. Espediza said in her amended complaint, on October 15th of 2015. Right, they were still doing things for her. No, Judge. No, Judge. There's nothing alleged in it. Michael Scaraggi. Hang on. You're saying arguing for her in court was not representing her? On the 15th of October, Your Honor. On the 15th of October is when they... That's the last date they did work of 2015, which means in order to comply with the New York African Statute of Limitation, that would bring us to October 14th of 2018. And the complaint was filed on December 3rd of 2018. The only thing that happened after October 15th, as alleged in the complaint, the only legal work, no work was done other than a formal written that they're no longer the counsel. No work was done. Nothing in the complaint indicated work was done. So again, Judge Gardafi had what's before him, a representation by the fine that the last work that was done, including, Judge, there's representation, allegation that she is being defrauded. On the 15th of October, she said she realized she's being defrauded on that date. That is the last date that work was done, which required within the New York African Statute of Limitation for her to file a complaint by October 14th of 2015. Thank you. Thank you very much. I think we have the argument. We'll hear from Mr. Griffith. You have two minutes rebuttal. Thank you. I want to emphasize that every single case on which the district court relied in finding that Ms. Esposito had lost trust and confidence earlier than December 3, 2015, and therefore the continuous representation doctrine stopped tolling the limitation. Every single one of those cases involved some objective manifestation of trust, a loss of trust and confidence. A letter, a change of attorney, a termination. Most of those cases argued about a period of weeks or months or days between one objective act and another. Nothing like that was the case with Ms. Esposito. Let me ask you a different question, please, if I could. Sure. So the district court, in addition to all the timeliness questions we talked about, district court found flaws in the basic underlying complaint, and we're on a recent discretion review on the Rule 59, Rule 60 motion. I take it you argue that the proposed second amendment complaint would address the time bar, but how would it overcome the other flaws that you would be able to show that you could have prevailed in the underlying matter? What do you rely on the merits? I think we touch on this briefly, at least in our opening brief, but we've basically established a well-pled case of legal malpractice. Could you point exactly in your opening brief to where you develop that argument? Because it looked to me like a passing mention more than an argument. It really, we don't have a separate argument on that. It's a, I believe we've talked about it in the factual section, and since I have so little time, what I can do is point that out in a Rule 28J section. Because you know, in a blue brief, where that's part of your, the basis for your appeal on a Rule 59, Rule 60 challenge, you're in danger of having that as waived if it's not a developed argument, you know. Well, let me try to point where that now is in a Rule 28J letter. But I would say that the proposed second amended complaint states several points of legal malpractice. For example, as Judge Nardini mentioned, the fact that the defendants rejected the $750,000 offer that was made at a mediation in 2014 after the defendant's summary judgment motion was fully briefed. And there was a huge risk of losing that, particularly given the arguments that the defendants had raised, without even consulting this. Okay. Thank you very much. The arguments will take the matter on advisement. Thank you very much.